IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| WESTERN WORLD INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:22-cv-11333 ) |
| PSP STORES, LLC d/b/a PET SUPPLIES PLUS, | ) ) ) ) |
| Defendant. | ) ) ) ) ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Western World Insurance Company ("Western World"), by and through its attorneys, and for its Complaint for Declaratory Judgment against Defendant PSP Stores, LLC d/b/a Pet Supplies Plus ("PSP Stores"), alleges as follows:

**INTRODUCTION**

1. This is an action for declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201 and 2202, in which Western World seeks a declaration that it has no duty to defend or indemnify PSP Stores under a Commercial General Liability policy for the putative class-action lawsuit titled *Jennifer Walker v. PSP Stores, LLC d/b/a*

1

*Pet Supplies Plus*, Case No. 2021-CH-03851, pending in the Circuit Court of Cook County, Illinois (the "Walker Lawsuit").

2. The complaint in the Walker Lawsuit asserts claims against PSP Stores for violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), based upon PSP Stores' alleged use of biometric scanning devices to track its employees' time at work. The complaint in the Walker Lawsuit does not allege any claims that are covered under the Western World policy. Accordingly, Western World seeks a declaratory judgment that it owes neither a duty to defend nor a duty to indemnify PSP Stores with respect to the Walker Lawsuit.

## PARTIES

3. Western World is a corporation organized under the laws of New Hampshire, with its principal place of business in New Jersey. At all relevant times, Western World has been duly licensed and authorized to issue insurance policies in Michigan.

4. PSP Stores is a limited liability company organized under the laws of Ohio and with its principal place of business in Livonia, Michigan. Based on the SEC Form 10-K of Franchise Group, Inc. for the 2021 fiscal year, PSP Stores' sole member is PSP Group, LLC; the sole member of PSP Group, LLC is Pet Supplies "Plus", LLC; the sole member of Pet Supplies "Plus", LLC is PSP Midco, LLC; the sole member of PSP Midco, LLC is Franchise Group Newco PSP, LLC; the sole

member of Franchise Group Newco PSP, LLC is Franchise Group Intermediate PSP, LLC; the sole member of Franchise Group Intermediate PSP, LLC is Franchise Group Intermediate Holdco, LLC; the sole member of Franchise Group Intermediate Holdco, LLC is Franchise Group New Holdco, LLC; and the sole member of Franchise Group New Holdco, LLC is Franchise Group, Inc. Franchise Group, Inc. is a corporation organized under the laws of the state of Delaware, with its principal place of business in Virginia Beach, Virginia.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a)(1), because Western World and PSP Stores are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. PSP Stores is subject to this Court's personal jurisdiction because it is headquartered in, and does substantial business in, the state of Michigan.

7. Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b)(1) and (2), because PSP Stores resides in this judicial district, and a substantial part of the events or omissions giving rise to this dispute occurred in this judicial district.

## THE WESTERN WORLD POLICY

8. Western World issued to Pet Supplies Plus, LLC and PSP Parent LLC Commercial Lines Policy No. BRP0001854, effective January 15, 2014 to January 15, 2015 (the "Policy").

9. The Policy provides Commercial General Liability ("CGL") coverage pursuant to CGL Coverage Form CG 00 01 12 07, as modified by various forms and endorsements. The Policy's CGL Coverage includes Coverage A. (Bodily Injury and Property Damage Liability) and Coverage B. (Personal and Advertising Injury Liability).

10. The Policy includes the following provisions, which appear in the CGL Coverage Form as amended by the "Recording and Distribution of Material or Information in Violation of Law Exclusion" endorsement (CG 00 68 05 09):

> **SECTION I – COVERAGES**
> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
> **1.    Insuring Agreement**
>
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> *   *   *
>
>     **b.** This insurance applies to "bodily injury" and "property damage" only if:
>
>         **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
>         **(2)** The "bodily injury" or "property damage" occurs during the policy period;

\* \* \*

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.

   \* \* \*

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. **Knowing Violation Of Rights Of Another**

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   \* \* \*

5

    **c.**    **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

*   *   *

    **p.**    **Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

*   *   *

**SECTION V – DEFINITIONS**

\* \* \*

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    a. False arrest, detention or imprisonment;

    b. Malicious prosecution;

    c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f. The use of another's advertising idea in your "advertisement"; or

    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

7

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment

\* \* \*

11. The Policy also includes the following provisions, which appear in the "Employment-Related Practices Exclusion" endorsement (CG 21 47 12 07):

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

\* \* \*

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability**:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

8

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person;

\* \* \*

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

12. The Policy also includes the following provisions, which appear in the "Limitation of Coverage to Designated Premises or Project" endorsement (CG 21 44 07 98):

**LIMITATION OF COVERAGE TO DESIGNATED PREMISES OR PROJECT**

\* \* \*

**SCHEDULE**

**Premises:**
Those Premises listed on policy form WW10A (10/05)
– Schedule of Locations

| Project: |
|---|

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:

**1.** The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

**2.** The project shown in the Schedule.

13. The Policy also includes the following provisions, which appear in the "Broad Form Named Insured" endorsement (WWME001(04/10)):

### Broad Form Named Insured

\*   \*   \*

WHO IS AN INSURED (Section II) is amended to include as an insured:

1. Any of your subsidiaries and sub-subsidiaries;

2. Any organization, partnership, joint venture, limited liability corporation/limited liability company or corporation in which you have ownership interest or operate under a written management agreement; and

3. Any associated or affiliated entity while acting on your behalf, which is under your active management.

All agents, servants, directors, officers, partners, volunteers, consultants and employees, whether active or inactive, of each of the entities listed above shall also be considered an insured, but only while acting within the scope of their duties as such.

## THE WALKER LAWSUIT

14. On August 5, 2021, Jennifer Walker filed a putative class-action complaint in the Walker Lawsuit (the "Walker Complaint"), naming Walker as the plaintiff and PSP Stores as the defendant. A copy of the Walker Complaint is attached hereto as Exhibit A.

15. The Walker Complaint alleges that Walker worked as a manager at the Elmwood Park, Illinois location of PSP Stores from January 1, 2012 through January 1, 2017. (Ex. A ¶ 41).

16. The Walker Complaint alleges that PSP Stores had a policy that required employees, as a condition of employment, to use their fingerprints for authentication and time recording purposes. (Ex. A ¶ 42). Specifically, employees were allegedly required to scan their fingerprints when they were hired, so that PSP Stores could add them into its employee database(s), and each time they clocked in or out of work. (Ex. A ¶¶ 31-32).

17. The Walker Complaint further alleges that PSP Stores disclosed its employees' fingerprint data to at least one third-party payroll vendor, and likely other third parties that host the biometric data in their data centers, without first obtaining the informed consent of its employees. (Ex. A ¶ 33).

18. The Walker Complaint alleges that PSP Stores' policy of collecting, storing, and disclosing its employees' biometric information for timekeeping

purposes violates BIPA. In particular, PSP Stores is alleged to have violated BIPA by failing to: inform its employees of the purpose and duration for which it was collecting their biometric data; provide a publicly available retention policy; obtain written releases from its employees to collect, store, disseminate, or otherwise use their fingerprints; and obtain its employees' informed consent to disclose, redisclose, or otherwise disseminate their biometric data to a third party. (Ex. A ¶¶ 11, 33-34).

19. The Walker Complaint asserts three causes of action: (1) Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain, and Adhere to Publicly-Available Retention Schedule; (2) Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information; and (3) Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and Information Before Obtaining Consent. (Ex. A ¶¶ 65-92).

20. The Walker Complaint seeks the following relief on behalf of Walker and those alleged to be similarly situated: class certification; declaratory, injunctive, and equitable relief; statutory damages of $5,000 for each intentional and/or reckless violation of BIPA or, in the alternative, $1,000 for each negligent violation of BIPA; attorneys' fees, costs, and other litigation expenses; pre- and post-judgment interest; and any such other and further relief as equity and justice may require. (Ex. A, Prayer For Relief, pp. 19-20).

# COUNT I
## Western World Has No Duty to Defend PSP Stores
## Under the Policy for the Walker Lawsuit

21. Paragraphs 1-20 are repeated and realleged as if fully set forth herein.

22. The Policy potentially provides coverage to only those persons or entities that are insureds under the Policy. The Policy identifies as Named Insureds Pet Supplies Plus, LLC and PSP Parent LLC. PSP Stores is not identified in the Policy as an insured. Western World has no duties owing PSP Stores under the Policy to the extent PSP Stores does not qualify as an insured.

23. Even if PSP Stores qualifies as an insured under the Policy, Western World has no duty under Coverage A. to defend PSP Stores with respect to the Walker Lawsuit because the Walker Complaint does not allege a claim for damages because of "bodily injury" or "property damage" caused by an "occurrence" as defined.

24. Even if PSP Stores qualifies as an insured under the Policy, Western World has no duty under Coverage B. to defend PSP Stores with respect to the Walker Lawsuit for the following reasons:

   a. Western World has no duty to defend PSP Stores unless the Walker Complaint alleges "personal and advertising injury," as defined, caused by an offense arising out of a named insured's business committed during the policy period and not subject to an exclusion.

    b. "Personal and advertising injury" coverage for the Walker Lawsuit is excluded by Exclusion 2.p. ("Recording And Distribution Of Material Or Information In Violation Of Law").

    c. "Personal and advertising injury" coverage for the Walker Lawsuit is excluded by the "Employment-Related Practices Exclusion" endorsement.

WHEREFORE, Western World respectfully requests that this Honorable Court enter a judgment finding and declaring that Western World has no duty to defend PSP Stores with respect to the Walker Lawsuit. Western World also respectfully requests that this Court award Western World such other and further relief as is just and proper.

## COUNT II
## Western World Has No Duty to Indemnify PSP Stores Under the Policy for the Walker Lawsuit

25. Paragraphs 1-24 are repeated and realleged as if fully set forth herein.

26. Western World has no duty to indemnify PSP Stores with respect to the Walker Lawsuit because there is no duty to defend, and therefore there is no duty to indemnify as a matter of law.

27. Even if Western World owes a duty to defend under the Policy, Western World has no duty under Coverage A. to indemnify PSP Stores with respect to the Walker Lawsuit for the following reasons:

    a. There is no coverage for claims against any entity that is not an "Insured" under the Policy.

    b. There is no coverage because none of the claims seek damages because of "bodily injury" or "property damage" caused by an "occurrence" as defined.

28. Even if a duty to defend is owed under the Policy, Western World has no duty under Coverage B. to indemnify PSP Stores with respect to the Walker Lawsuit for the following reasons:

    a. There is no coverage for claims that do not seek damages because of "personal and advertising injury," as defined, caused by an offense arising out of a named insured's business.

    b. There is no coverage for "personal and advertising injury" caused by an offense committed outside of the Policy's policy period.

    c. There is no coverage pursuant to Exclusion 2.P. ("Recording And Distribution Of Material Or Information In Violation Of Law").

    d. There is no coverage pursuant to the "Employment-Related Practices Exclusion" endorsement.

    e. There is no coverage for claims against any entity that is not an "Insured" under the Policy.

 f. There is no coverage for "personal and advertising injury" that does not arise out of the ownership, maintenance, or use of one of the scheduled premises listed in the Policy's "Schedule of Locations" (WW10A (10/5)).

 g. There is no coverage for any "personal and advertising injury" to which Exclusion 2.a. ("Knowing Violation Of Rights Of Another") applies.

 h. There is no coverage for any "personal and advertising injury" to which Exclusion 2.c. ("Material Published Prior To Policy Period") applies.

29. Even if Western World owes a duty to defend under the Policy, Western World has no duty under Coverage A. or Coverage B. of the Policy to indemnify PSP Stores for any declaratory relief, injunctive and equitable relief, or attorney's fees and costs, because they do not constitute damages for which the Policy provides coverage.

WHEREFORE, Western World respectfully requests that this Honorable Court enter a judgment finding and declaring that Western World has no duty to indemnify PSP Stores with respect to the Walker Lawsuit. Western World also respectfully requests that this Court award Western World such other and further relief as is just and proper.

Dated: June 15, 2022                          Respectfully submitted,

                                                          WESTERN WORLD INSURANCE COMPANY

By: */s/ Lauren N. Keilin*
                One of Its Attorneys

Lauren N. Keilin (MI State Bar No. P82699)
lkeilin@nicolaidesllp.com
Thomas W. Arvanitis
tarvanitis@nicolaidesllp.com
NICOLAIDES FINK THORPE
MICHAELIDES SULLIVAN LLP
10 South Wacker Drive, Suite 2100
Chicago, IL  60606
Tel:  312-585-1400
Fax:  312-585-1401

*Attorneys for Plaintiff Western World Insurance Company*